UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
───────────────────────────────
ASMA AHMED,

                  Plaintiff,

       -against-

RENA BITTER, Assistant Secretary, Bureau of Consular Affairs, U.S Department of State; HELEN LAFAVE, Deputy Chief of Mission, U.S. Embassy in Bangladesh; ANTONY BLINKEN, Secretary of the U.S. Department of State,

                  Defendants.

MEMORANDUM & ORDER
23-CV-189 (NGG) (RJL)

NICHOLAS G. GARAUFIS, United States District Judge.

Plaintiff Asma Ahmed asks the court to compel the Defendants, State Department officials, to adjudicate an application for permanent resident status for her son, Ezra Ahmed Evan, who resides in Bangladesh. (*See* Compl. (Dkt. 1).) The Government has moved to dismiss Plaintiff's claims for lack of subject matter jurisdiction and for failure to state a claim. (Not. of Mot. (Dkt. 14); Mot. (Dkt. 15); Opp. (Dkt. 13); Reply (Dkt. 16).)

For the reasons discussed herein, the court DENIES the Government's motion to dismiss Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(1), but GRANTS the Government's motion to dismiss Plaintiff's claims, in their entirety, under Rule 12(b)(6), without prejudice. Plaintiff may file an amended complaint within sixty days of the date of this Memorandum and Order.

I. BACKGROUND

   A. **Statutory Framework**

The family-based visa process, where an American citizen or legal permanent resident ("LPR") seeks to bring a foreign relative to this country, begins with the filing of a Form I-130 petition

1

with the United States Customs and Immigration Service ("USCIS"). *Cuthill v. Pompeo*, No. 18-CV-1679 (JCH), 2019 WL 13272516, at *1 (D. Conn. July 25, 2019) (citing 8 U.S.C. § 1154)[1]; *see also* 8 C.F.R. § 204.1(a)(1). Only after USCIS approves the I-130 petition can the family member who seeks to immigrate can begin the visa application process with the Department of State. *Cuthill v. Blinken*, 990 F.3d 272, 274 (2d Cir. 2021). This approval by USCIS can take up to a year or more. *Id.* (citing *Scialabba v. Cuellar de Osorio*, 573 U.S. 41, 46-50 (2014) (plurality opinion)).

Once an I-130 petition is approved, it is sent to the Department of State's National Visa Center ("NVC") for pre-processing. *Cuthill*, 2019 WL 13272516, at *1. After the NVC determines that all preliminary steps have been accomplished, it marks the case file as "documentarily complete" and works with the appropriate U.S. Embassy with jurisdiction over the applicant's place of residence to schedule an appointment for the applicant's in-person interview. *See Augustin v. Blinken*, No. 23-CV-76 (JEB), 2023 WL 4547993, at *1 (D.D.C. July 14, 2023); *see also* 22 C.F.R. § 42.62. After that interview, a United States consular officer must either issue the visa, refuse the visa, or discontinue granting the visa. 8 C.F.R. § 42.81(a).

If refusing the visa, the consular officer "shall inform the applicant of the provision of law or implementing regulation on which the refusal is based and of any statutory provision of law or implementing regulation under which administrative relief is available." 8 C.F.R. § 42.81(b). If the application is refused "and the applicant within one year from the date of refusal adduces further evidence tending to overcome the ground of ineligibility on which the refusal was based, the case shall be reconsidered."

---

[1] When quoting cases, unless otherwise noted, all citations and internal quotation marks are omitted, and all alterations are adopted.

*Id.* § 42.81(e) Throughout the process, the foreign national bears the burden of proof to establish eligibility. 8 U.S.C. § 1361.

Generally, an applicant must fall within one of a limited number of immigration categories and the time it takes for the application to be adjudicated depends on the type of immigrant visa sought. A Lawful Permanent Resident, as Plaintiff is here, (Compl. ¶ 8.), may file I-130 petitions for: (1) F2A visas for minor sons or daughters (those under 21 years old); or (2) F2B visas for adult sons or daughters (those 21 years old and above). *See Cuthill*, 990 F.3d at 274 (citing 8 U.S.C. § 1153(a)(2)(A) (F2A visas) and 8 U.S.C. § 1153(a)(2)(B) (F2B visas)); *see also* 8 U.S.C. § 1101(b)(1) (defining to refer to "an unmarried person under twenty-one years of age.").

Generally, more individuals apply for visas than there are spots available. *Scialabba*, 573 U.S. at 47-48. Therefore, when an individual's I-130 petition is approved for an F2A or F2B visa, it does not result in a visa, but instead leads to that individual being placed in a different queue with others in her category in order of "priority date"— that is, the date on which the visa petition was filed. *See id.* at 47-48. Each month, the Department of State publishes a bulletin indicating the cutoff dates for F2A and F2B visas. *Cuthill*, 990 F.3d at 275. For example, the September 2020 visa bulletin states that the cutoff date for F2B visas was July 8, 2015, meaning that, with certain exceptions, visas are available for F2B beneficiaries whose petitions were filed before that date.[2] *See Cuthill*, 990 F.3d at 275 (reviewing the Visa Bulletin for January 2021).

---

[2] *See* Visa Bulletin for September 2020, *available at* https://travel.state.gov/content/travel/en/legal/visa-law0/visa-bulletin/2020/visa-bulletin-for-september-2020.html (last visited December 4, 2023).

This means there are "two relevant waiting periods for . . . F2A and F2B visa seekers: (1) the time it takes for the agency to process the petition and (2) the time it takes for a visa to become available." *Cuthill*, 990 F.3d at 275. An applicant's age is an important factor in determining when a visa becomes available. A minor son or daughter of an LPR generally waits in the significantly shorter F2A queue, while an adult son or daughter of an LPR must wait in the longer F2B visa queue. *Id.*

Also relevant in this case are rules concerning individuals who "age out" of the F2A visa reserved for children of LPR's under 21. The cause for the delay that leads an applicant to "age out" is important. "Processing delays"—delays caused by (1) the time it takes for USCIS to process one's I-130 petition or (2) the time it takes for the State Department to adjudicate the visa application once a visa number becomes available—are subtracted from the age of the visa beneficiary for the purpose of determining their minor status. *Scialabba*, 573 U.S. at 53. "But the time in between—the months or, more likely, years the alien spends simply waiting for a visa to become available—is not similarly excluded in calculating his age[.]" *Id.* As the Second Circuit has explained:

> [A]ssume an F2A petition is filed for a 17-year-old beneficiary, the agency takes two years to process the petition, and it takes three years for a visa to become available. . . . [W]e deduct the two years of processing time (though not the three years of waiting time) yielding a statutory age of 20. As far as the U.S. government is concerned, the two years of processing time never happened.

*Cuthill*, 990 F.3d at 276.

Again, it is only "processing time" that is excluded; the time spent waiting for one's visa number can still lead an individual to "age out" after applying for a child visa. *Scialabba*, 573 U.S. at 53 ("Every day the alien stands in that line is a day he grows older, under the immigration laws no less than in life. And so derivative

4

beneficiaries, as well as principal beneficiaries of F2A petitions, can still "age out"—in other words, turn 21, notwithstanding § 1153(h)(1)'s dual age adjustments—prior to receiving an opportunity to immigrate."). This is practically important for an individual who may be shifted from the shorter F2A line to the F2B line once they turn 21 and could cause the length of time that the applicant must wait for their visa to increase by years. *Id.* (noting that an applicant's petition is "automatically converted" to the appropriate visa category when the applicant is determined to be 21 years of age or older pursuant to 8 U.S.C. § 1153(h)).

### B. Factual Background[3]

Plaintiff is a Lawful Permanent Resident residing in Queens, New York. (Compl. ¶ 8.) She alleges that although she initially filed her (now twenty-seven-year-old) son's I-130 visa application in June 2015 and USCIS approved her visa application in December 2015, the U.S. Embassy in Bangladesh has not taken any further steps to adjudicate the visa application. (*Id.* ¶¶ 2-4; *see also* Repede Decl. ¶ 4.) Her complaint, however, is sparse and contains few factual allegations concerning the delay or the cause of the delay. (*See generally* Compl. ¶¶ 2-7, 16-18.)

Alongside their motion to dismiss, Defendants, individual State Department officers, (*Id.* ¶¶ 9-11), submitted a Declaration by Theresa Repede, an employee of the U.S. Department of State,

---

[3] The following facts are generally taken from the Amended Complaint and, for the purposes of this motion to dismiss, are assumed to be true. *See Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb Co.*, 28 F.4th 343, 349 (2d Cir. 2022).

providing additional detail concerning the visa petition and application process at issue. (*See* Repede Decl.)[4] According to Ms. Repede, Plaintiff's initial application, made on June 25, 2015, was for an F2A visa. (Repede Decl. ¶ 4.) This initial application was approved by USCIS on December 28, 2015, and received by the NVC on January 20, 2016. (*Id.* ¶ 5.) On May 1, 2017, a visa number was made available for individuals seeking an F2A visa who had applied by the priority date of June 25, 2015. (*Id.* ¶ 6.) By that date, however, Plaintiff's son had aged out of eligibility for an F2A visa, which led to his automatic placement in the F2B visa category, for which no visa numbers were available at that time. (*Id.*)[5] It was only on September 1, 2020 that a visa number became available to unmarried adult sons of LPRs in the F2B visa category with a priority date of June 25, 2015. (Repede Decl. ¶ 6.) And it was only on February 5, 2021 that Plaintiff's son became "documentarily qualified" for his visa and eligible for an

---

[4] In addition to information from the Compliant, which provides limited details on the visa application process, the court also considers a Declaration of Theresa Repede, an employee of the U.S. Department of State for the purpose of this motion. (*See* Repede Decl. (Dkt. 15-1).) Plaintiff does not dispute the admissibility of this declaration or challenge the truth of the statements made therein; indeed, he refers to Defendants' exhibits in her Opposition to support the allegations made in her Complaint. (*See* Opp. at ECF 6, 10.). *See also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 n.3 (2d Cir. 2002) (noting that in ruling on a Rule 12(b)(6) motion to dismiss, a court may consider documents that, although not incorporated into a complaint are integral to it).

[5] Based on Ms. Repede's Declaration, Mr. Evan was born on September 25, 1995 and was therefore twenty-one years and a little over seven months old on May 1, 2017. Assuming that six months of time is subtracted to account for the time USCIS was processing Mr. Evan's application between June and December 2015, *see Scialabba*, 573 U.S. at 53, Mr. Evan would be ineligible for a child visa on May 1, 2017 by just over one month, according to the court's calculation.

6

interview appointment that would allow him to apply for his visa. (*Id.* ¶ 7-8.)[6]

While waiting for the visa application to proceed, Plaintiff alleges that the separation from her son has caused both Plaintiff and Mr. Evan significant financial hardship and emotional distress. (Compl. ¶¶ 6-7.)

### C. Procedural Background

Plaintiff filed this complaint on January 11, 2023, seeking to compel action on her son's visa application. (*See generally* Compl.) Plaintiff claims that relief is warranted: (1) under the Administrative Procedure Act because of Defendants' unreasonable delay, in reviewing and adjudicating her son's application, (*id.* ¶ 19-23 (citing 5 U.S.C. § 706(1))); (2) under the Mandamus Act, which gives the court jurisdiction to compel Defendants to perform the nondiscretionary duty to adjudicate her son's application, (*id.* ¶¶ 24-31 (citing 28 U.S.C. § 1361)); and (3) because the failure to adjudicate the application violates Plaintiff's due process rights under the Fifth Amendment of the Constitution. (*Id.* ¶¶ 32-35.)

She asks the court to order that Defendants "process Plaintiff's son's visa application within fifteen (15) calendar days of the order or as soon as reasonably possible." (*Id.* ¶ 36.)

## II. LEGAL STANDARD

### A. Fed. R. Civ. P. 12(b)(1)

Under Rule 12(b)(1), a district court must dismiss a case when it "lacks the statutory or constitutional power to adjudicate it."

---

[6] It is not clear why Mr. Evan was not documentarily qualified prior to this date and therefore eligible for a visa beginning in September 2020. (*See generally* Mot. at 7 (noting only that all necessary documents had not yet been submitted without clarifying which documents or who was meant to submit them).)

*Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). The party "asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Fountain v. Karim*, 838 F.3d 129, 134 (2d Cir. 2016). "In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint (or petition) as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014). When the defendant challenges factual allegations in the complaint to argue that subject matter jurisdiction does not exist, the plaintiff must respond by "com[ing] forward with evidence of their own to controvert that presented by the defendant if the affidavits submitted on a 12(b)(1) motion . . . reveal the existence of factual problems in the assertion of jurisdiction." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016); *see also Amaya v. Ballyshear LLC*, 340 F. Supp. 3d 215, 219 (E.D.N.Y. 2018) (describing the process for a fact-based challenge). A plaintiff may "rely on the allegations in their pleading if the evidence proffered by the defendant is immaterial" to demonstrate the court's jurisdiction. *Katz v. Donna Karan Co., L.L.C.*, 872 F.3d 114, 119 (2d Cir. 2017). "[W]here jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings[.]" *Tandon*, 752 F.3d at 243.

### B. Fed. R. Civ. P. 12(b)(6)

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This plausibility analysis "does not impose a probability requirement at the pleading stage," but requires that the complaint provide "enough

fact to raise a reasonable expectation that discovery will reveal evidence of illegality." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Twombly*, 550 U.S. at 556). At this stage, the court "will accept all factual allegations in the [c]omplaint as true and draw all reasonable inferences in [Plaintiffs'] favor." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 429 (2d Cir. 2011).

## III. DISCUSSION

### A. Subject Matter Jurisdiction: Consular Nonreviewability

The Government argues that the court lacks subject matter jurisdiction to review Plaintiff's claim under the doctrine of consular nonreviewability. (Mot. at 9-13.)

The Second Circuit has held that the doctrine of consular nonreviewability bars judicial review of decisions to deny, suspend or grant an immigration visa. *See Wan Shih Hsieh v. Kiley*, 569 F.2d 1179, 1181 (2d Cir. 1978).[7] A majority of courts in this Circuit have extended this doctrine to bar not only judicial review of consular decisions and actions, but to bar *any* part of the visa application process, including cases seeking to compel action on an application within a reasonable period of time. *See Abdo v. Tillerson*, No. 17-CV-7519 (PGG), 2019 WL 464819, at *3 (S.D.N.Y. Feb. 15, 2019) (collecting cases). Despite broad language in *Hsieh* that it is "settled that the judiciary will not interfere with the visa-issuing process," the Circuit's holding did

---

[7] The Second Circuit has noted only one exception authorizing judicial review of the denial of a visa application—when the plaintiff challenges the denial on First Amendment grounds. *See Am. Acad. of Religion v. Napolitano*, 573 F.3d 115, 125 (2d Cir. 2009).

not apply to inaction by consulars. 569 F.2d at 1180-82.[8] Rather, *Hsieh* held that the doctrine applied to "the *action* of the American Consul in Taiwan suspending or denying the issuance of visas[.]" *Id.* (emphasis added). Specifically, the court affirmed dismissal of an action seeking review of the consulate officers' decisions to "h[o]ld up issuance of the visas" after determining that the plaintiff's permanent resident status—a predicate for the approval of her children's visa applications—may have been procured by fraud. *Id.* at 1180-81.[9] The action in *Hsieh* is therefore unlike the case at bar where Plaintiff is not challenging a consular official's actions but is instead challenging the unreasonable delay in taking any action.

A minority of district courts in this Circuit have accordingly distinguished actions alleging unreasonable delay in the visa application process from those challenging immigration officials' decisions to grant or deny a visa. *See, e.g., Am. Acad. of Religion v. Chertoff*, 463 F. Supp. 2d 400, 421 (S.D.N.Y. 2006) (observing that the government was "confusing its discretion over how it resolves the applications . . . with its discretion over whether it resolves them."); *Ceken v. Chertoff*, 536 F. Supp. 2d

---

[8] In *Hsieh*, the Second Circuit separately held that Respondent's unreasonable delay claim challenging INS officers' conduct in investigating suspected fraud in the visa application process was discretionary and therefore not reviewable under the Administrative Procedure Act. *Id.* at 1182. In ruling on the claim seeking to compel INS action to complete the investigation, the Circuit did not rely on the consular nonreviewability doctrine. *See generally id.*

[9] At least one court in this Circuit has emphasized the word "suspending" in *Hsieh* to support that the case applies broadly to bar judicial review of cases seeking to compel an official to adjudicate a visa application. *See, e.g., Al Naham v. U.S. Dep't of State*, No. 14-CV-9974 (JPO), 2015 WL 3457448, at *3 (S.D.N.Y. June 1, 2015). This court respectfully disagrees with this court's reading of the term used in *Hsieh*, and instead finds that in context it is more properly understood as referring to the *decision* by consular officials in that case to withhold the visas from the application pending the investigation into the suspected fraud. *See Hsieh*, 569 F.2d at 1180-81.

10

211, 216 (D. Conn. 2008) ("Because defendants are obligated to adjudicate plaintiff's application, failure to render a decision on the application within a reasonable period of time provides this Court with mandamus jurisdiction."); *Kim v. Ashcroft*, 340 F. Supp. 2d 384, 393 (S.D.N.Y. 2004) ("[Plaintiff's] claim is not one of equitable estoppel and he is not attempting to force the CIS to, in essence, reverse a decision denying citizenship. Rather, he is requesting that the CIS *adjudicate* his application within a reasonable time.")). This court, in fact, has previously considered unreasonable delay claims brought by a group of plaintiffs seeking to have their I-130 petitions adjudicated. *See Almakalani v. McAleenan*, 527 F. Supp. 3d 205, 224 (E.D.N.Y. 2021) (considering but ultimately rejecting Plaintiffs' unreasonable delay claims seeking to compel USCIS to adjudicate plaintiffs' I-130 visa petitions). Most, but not all, of these cases considered claims to compel action by non-consular USCIS officers. *See, e.g., id.* (reviewing actions by USCIS officers); *Ceken*, 536 F. Supp. 2d at 213 (same); *but see Chertoff*, 463 F. Supp. 2d at 404, 407-08 (reviewing actions by State Department officers and USCIS.) However, the analysis in each of these cases is relevant in considering the separation of powers concerns that underpin this doctrine and that are raised by the Government. (*See* Mot. at 10 (reviewing that the doctrine of consular nonreviewability is based in separation of powers principles).) *See also, e.g, Chertoff*, 463 F. Supp. 2d at 404, 421-222 ("[T]he wide latitude given the Executive to grant or deny a visa application—a discretion bounded only by the U.S. Constitution and Congressional mandate—does not include the authority to refuse to adjudicate a visa application.").

Outside of the Second Circuit, courts have more squarely rejected that the doctrine applies to claims focused on the lack of any action by consulate officials as opposed to decisions to grant or deny a visa application. The Ninth Circuit has long held that the consular nonreviewability doctrine does not apply to

claims focused on the lack of a decision by consular officials, as opposed to determinations on whether to grant or deny a visa application. *See Najafi v. Pompeo*, No. 19-CV-05782 (KAW), 2019 WL 6612222, at *5 (N.D. Cal. Dec. 5, 2019) ("Here, consular nonreviewability does not apply because Plaintiffs are not challenging the consular officer's decision, but the lack thereof . . . .") (citing *Patel v. Reno*, 134 F.3d 929, 931-32 (9th Cir. 1997)). Courts in the D.C. Circuit have drawn a similar distinction. *See Augustin*, 2023 WL 4547993, at *3 (collecting cases). As Chief Judge Boasberg of the United States District Court for the District of Columbia recently reviewed: "the doctrine of consular non-reviewability precludes review only of final visa determinations and does not apply to challenges regarding decisions that are not yet final. Cases in administrative processing have not been finally refused, and are therefore subject to judicial review for undue delay." *Id.; see also Al-Gharawy v. U.S. Dep't of Homeland Sec.*, 617 F. Supp. 3d 1, 13 (D.D.C. 2022) ("[T]he Supreme Court has recognized in the context of Section 706(1), where 'an agency fail[s] to take a discrete agency action that it is required to take . . . a court can compel the agency to act [even though it] has no power to specify what th[at] action must be.'")

This court agrees with the courts drawing this distinction. Judicial review of challenges to a consular officer's failure to make any decision at all does not interfere with the plenary power of Congress "to prescribe the terms and conditions upon which [aliens] may come to this country," *Hsieh*, 569 F.2d at 1181, or call into question the "enormous discretion" that Congress has granted the Executive in this area, *see Saleh v. Holder*, 84 F. Supp. 3d 135, 139 (E.D.N.Y. 2014). It would simply ensure that officers tasked by Congress to act on such applications do so without unreasonable delay. As one court in this district explained:

> Although there is no statutory or regulatory deadline by which the Government must adjudicate an application, at some point, its failure to take any action runs afoul of 5 U.S.C. § 555(b). Were it otherwise, the Government could hold visa applications in abeyance for decades without providing any reasoned basis for doing so. Such an outcome defies logic—the Government simply does not possess unfettered discretion to relegate aliens to a state of "limbo," leaving them to languish there indefinitely.

*Chertoff*, 463 F. Supp. 2d at 420 (quoting *Kim*, 340 F. Supp. 2d at 393).

This reasoning has force in cases such as this where Plaintiff alleges that she has waited in "limbo" for over eight years for an update on her son's application. (Compl. ¶ 6.)

Thus, the court finds that the doctrine of consular nonreviewability does not apply and therefore DENIES the Government's motion to dismiss for lack of subject matter jurisdiction.

### B. Unreasonable Delay Claim

The court now turns to the merits of Plaintiff's unreasonable delay claim.

The Administrative Procedure Act ("APA") requires agencies, "including the Department of State and DHS, to render decisions 'within a reasonable period of time.'" *Chertoff*, 463 F. Supp. 2d at 420 (quoting 5 U.S.C. § 555(b)). Under the Act, courts may "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). However, "a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a discrete agency action that it is required to take." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004) (emphasis omitted).

Courts evaluate APA claims that agencies have unreasonably delayed adjudicating plaintiffs' pending administrative matters under a six-factor standard set forth in *Telecommunications Research & Action Center v. FCC* ("*TRAC*"), 750 F.2d 70 (D.C. Cir. 1984); *see also Almakalani*, 527 F. Supp. 3d at 224 (applying this standard to unreasonable delay claims concerning plaintiffs' I-130 applications). Under this standard:

> (1) the time agencies take to make decisions must be governed by a "rule of reason"; (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority; (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and (6) the court need not find any impropriety lurking behind agency lassitude in order to hold that agency action is unreasonably delayed.

*TRAC*, 750 F.2d at 80.

These six factors "are not 'ironclad,' but rather are intended to provide 'useful guidance in assessing claims of agency delay.'" *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) (quoting *TRAC*, 750 F.2d at 80). The analysis is generally fact-intensive. *Kaur v. Mayorkas*, No. 22-CV-4514 (PAE), 2023 WL 4899083, at *5 n.6 (S.D.N.Y. Aug. 1, 2023). However, while fact-intensive, it is also not uncommon for courts to resolve unreasonable delay claims concerning visa adjudication on a motion to dismiss. *See Kaur*, 2023 WL 4899083, at *5 n.6; *Thomas v. Pompeo*, 438 F. Supp. 3d 35, 44 (D.D.C. 2020) (collecting cases).

In considering the first two factors, "Congress has not supplied a rule of reason by imposing a statutory deadline on considering visa applications, so the Court turns to case law as a guide to the content of the rule applicable here." *Augustin*, 2023 WL 4547993, at *5 (applying the *TRAC* factors to a claim focused on adjudication of plaintiffs' I-130 petitions). Moreover, "Congress has given the State Department and other agencies wide discretion in the area of immigration processing." *Id.* (quoting *Skalka v. Kelly*, 246 F. Supp. 3d 147, 153-54 (D.D.C. 2017)). There is "no *per se* rule as to how long is too long to wait for agency action," *In re Am. Rivers & Idaho Rivers United*, 372 F.3d 413, 419 (D.C. Cir. 2004), but "district courts have generally found that immigration delays in excess of five, six, seven years are unreasonable, while those between three to five years are often not unreasonable." *Sarlak v. Pompeo*, No. 20-CV-35 (BAH), 2020 WL 3082018, at *6 (D.D.C. June 10, 2020) (collecting cases); *see also Yan Chen v. Nielsen*, No. 17-CV-7157 (BMC), 2018 WL 1221130, at *2 (E.D.N.Y. Mar. 8, 2018) ("[T]he mere delay of roughly four and a half years is an inadequate ground to grant either mandamus or APA relief."); *Hoo Loo v. Ridge*, No. 04-CV-5553 (DLI), 2007 WL 813000, at *4 (E.D.N.Y. Mar. 14, 2007) (concluding that delay of over four years was not unreasonable); *Saleh v. Ridge*, 367 F. Supp. 2d 508, 513 (S.D.N.Y. 2005) (finding delay of almost five years not unreasonable "in light of the . . . volume of applications . . . in the system" and limits on how many applications could be granted); *Almakalani*, 527 F. Supp. 3d at 225 (rejecting claims brought to compel USCIS to adjudicate I-130 petitions that had been pending for almost five years).

Here, the relevant starting date for the unreasonable delay analysis is disputed. Plaintiff alleges that they filed their petition in June 2015 and it was approved by USCIS in December 2015. (Compl. ¶¶ 2-4.) They argue that because their petition has "languished" since then, seven or eight years is the appropriate time period when considering unreasonable delay. (Opp. at ECF 6.)

The Government argues that the proper starting point is when Mr. Evan's case became "documentarily qualified"[10] on February 5, 2021 because it was only at this time that State Department officers could have scheduled an interview and acted on Plaintiff's application. (Mot. at 14; Repede Decl. ¶¶ 7-8.) Therefore, according to the Government, Plaintiff's claim must fail because twenty-three months (now thirty-four months) would not be unreasonable. (Mot. at 13-14.)

The court agrees with the Government that June or December 2015 are not the proper starting dates when considering the unreasonable delay claim here. At the earliest, the Defendants could not have acted until September 2020 when a visa number became available. (Repede Decl. ¶ 7.) As discussed above when reviewing the relevant statutory framework, approval of an I-130 petition does not by itself allow one to apply for a visa if a spot is not available. *See supra*. Plaintiff provides no support to show that the State Department officials would have been able to adjudicate Mr. Evan's petition prior to his receipt of a visa number in September 2020 or his becoming documentarily qualified in February 2021. Thus, the relevant length of time in considering Plaintiff's unreasonable delay claim is three years.

Without more, three years is not sufficient to show unreasonable delay in adjudicating a visa application. *See supra*. And Plaintiff does not plausibly allege that the Government officers "were just twiddling their thumbs" during this time, as opposed to juggling competing priorities. *Mashpee Wampanoag Tribal Council Inc. v.*

---

[10] These documents were only able to be documentarily qualified once a visa classification number was assigned, which occurred in September 2020. (*See* Mot. at 4 (citing Visa Bulletin for September 2020, available at https://travel.state.gov/content/travel/en/legal/visalaw0/visa-bulletin/2020/visa-bulletin-for-september-2020.html (listing, for September of Fiscal Year 2020, at cut-off for priority dates on or before July 8, 2015 in the F2B family preference category in September 2020) (last visited December 4, 2023).)

*Norton*, 336 F.3d 1094, 1100-01 (D.C. Cir. 2003). The burden is on the Plaintiff to plausibly allege unreasonable delay, and "[o]ther than the passage of time, Plaintiff[] [has] given the court no basis on which to conclude that the process of adjudicating [her] petition[] has been unreasonably prolonged or delayed." *See Almakalani*, 527 F. Supp. 3d at 225. In sum, Plaintiff has not adequately pled unreasonable delay under 5 U.S.C. § 706(1).

The court notes, however, that the Government does not provide a reason for the delay, apart from alluding to general "government priorities" and "geopolitical considerations" that are implicated by visa application processing and adjudication. (*See* Reply at 8). The Government has not pointed to any evidence that competing priorities led to the delay in the application, or even that Plaintiff's son would be jumping ahead of others in the line if the court compelled action on his application. (*See generally* Mot. at 14-18; Reply at 5-9.)

This lack of explanation for the delay is relevant in considering whether an amended complaint that alleges unreasonable delay using the proper starting date—which, as noted, this court finds to be either September 2020 or February 2021—would be futile or could allow Plaintiff to plausibly allege unreasonable delay under the APA. Courts have allowed claims concerning immigrations to proceed to discovery when the "complaint permits a plausible inference that this delay is not attributable to a rule of reason" even when the delay has been for shorter time periods that the time at issue here. *See, e.g., Lyons v. United States Citizenship & Immigr. Servs.*, No. 21-CV-3661 (JGK), 2023 WL 144879, at *6, 9 (S.D.N.Y. Jan. 10, 2023) (rejecting a motion to dismiss a plaintiff's I-526 petition when plaintiff had been waiting for 2.5 years); *Keller Wurtz v. USCIS*, No. 20-CV-2163, 2020 WL 4673949, at *4 (N.D. Cal. Aug. 12, 2020) (concluding, based on all of the alleged circumstances, that a plaintiff who had been

waiting "around two years" for an I-526 adjudication stated an unreasonable-delay claim).

In sum, Plaintiff has not plausibly alleged unreasonably delay in the adjudication of her visa application. The court therefore GRANTS the Government's motion to dismiss. However, the court also grants Plaintiff leave to amend her complaint, if she so chooses, to cure the deficiencies concerning the unreasonable delay claim discussed herein.

### C. Mandamus Act Claim

Plaintiff also alleges that the court should compel Defendants to adjudicate her son's visa application under the Mandamus Act. (Compl. ¶¶ 24-31.)

Under the Mandamus Act, "[t]he district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361. To obtain mandamus relief, a plaintiff must show that "(1) there is a clear right to the relief sought; (2) the Government has a plainly defined and peremptory duty to perform the act in question; and (3) there is no other adequate remedy available." *Benzman v. Whitman*, 523 F.3d 119, 133 (2d Cir. 2008). "The action that the plaintiff seeks to compel must be subject to positive command, plainly described, and free from doubt." *Almakalani*, 527 F. Supp. 3d at 226. "The extraordinary remedy of mandamus under 28 U.S.C. § 1361 will issue only to compel the performance of a clear nondiscretionary duty." *Pittston Coal Grp. v. Sebben*, 488 U.S. 105, 121 (1988).

While Defendants have a non-discretionary duty to adjudicate Plaintiff's Form I-130 petition at some point in time, they have no "plainly defined and peremptory duty" to adjudicate it within any particular time frame. *Almakalani*, 527 F. Supp. 3d at 226; *see also Benzman*, 523 F.3d at 133. Thus, Plaintiff is unable to

18

show that she has a clear right to immediate adjudication within a specified time frame and there is not a clear duty to require the Defendants to act within fifteen days as Plaintiff requests. Further, to the extent that Plaintiff argues that her claim is based on compelling adjudication within a "reasonable" time, then Section 706(1) of the APA would provide Plaintiffs with an "adequate remedy." *See Benzman*, 523 F.3d at 133. Thus, Plaintiff cannot establish the essential prerequisites for a writ of mandamus. The court therefore GRANTS Defendants' motion to dismiss Plaintiff's Mandamus Act claim.

### D. Due Process Claim

Lastly, Plaintiff asserts that "Defendants' conduct violates Plaintiff's substantive and procedural due process rights protected by the Fifth Amendment of the Constitution." (Compl. ¶¶ 33-35.)

Plaintiff argues that she has a "constitutional due process right in family, family unity and free association." (Opp. at ECF 9.) However, she points to no case law holding that there is a fundamental constitutional right to cohabitate with one's family members in the United States. Rather, courts have consistently rejected arguments that such a right exists. *See, e.g., Alharbi v. Miller*, 368 F. Supp. 3d 527, 570-71 (E.D.N.Y. 2019) ("[P]laintiffs do not have a fundamental right to have or raise their children in the United States"); *Gebhardt v. Nielsen*, 879 F.3d 980, 988 (9th Cir. 2018) ("[T]he generic right to live with family is far removed from the specific right to reside in the United States with noncitizen family members."). Plaintiff's substantive due process claim therefore fails.

Plaintiff's complaint also asserts a procedural due process claim, arguing that she has a "statutorily created entitlement to adjudication of her son's visa application." (Compl. ¶ 35).[11] However, Plaintiff has not shown that she has a protected liberty or property interest that the Government has deprived without due process, and her procedural due process rights are therefore not implicated. *See Almakalani*, 527 F. Supp. 3d at 229 (E.D.N.Y. 2021); *Nurjahan v. U.S. Dep't of State*, No. 22-CV-2692 (ARR), 2023 WL 2931581, at *2-3 (E.D.N.Y. Apr. 13, 2023). Thus, Plaintiff's procedural due process claim also fails.

In sum, the court GRANTS the Government's motion to dismiss Plaintiff's due process claim.

## IV. CONCLUSION

For the reasons discussed herein, the Government's motion to dismiss Plaintiff's claims under Federal Rule of Civil Procedure 12(b)(1) is DENIED and the Government's motion to dismiss Plaintiff's claims under Rule 12(b)(6) is GRANTED, without prejudice. Plaintiff may file an amended complaint within sixty days of the date of this Memorandum and Order.

SO ORDERED.

Dated:   Brooklyn, New York
         January 2, 2024

                                              s/Nicholas G. Garaufis
                                              NICHOLAS G. GARAUFIS
                                              United States District Judge

---

[11] The court notes that Plaintiff does not discuss her procedural due process claim in her brief opposing Defendants' motion to dismiss. (*See generally* Opp. at ECF 8-9.)